**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:26-CR-136 |
| | ) | |
| | ) | JUDGES VARLAN/POPLIN |
| DAVID KERR | ) | |
| a/k/a Resistor@tennessee-me.bsky.social | ) | |

**UNITED STATES MEMORANDUM IN SUPPORT OF DETENTION**

Using the Bluesky social media platform, defendant made numerous public threats in 2025 to injure, maim, and kill ICE agents, and the grand jury indicted him for it. R. 3, Indictment. Last month, agents confronted defendant with his threatening social media posts. After meeting with the agents, defendant used another social media platform—Facebook—to portray the law enforcement officers who confronted him as the "gestapo" and claimed that he had been "silenced," evidencing his continuing hostility toward law enforcement and his reaction to lawful intervention following his Bluesky threats. This memorandum previews the evidence that the United States intends to offer at defendant's detention hearing. If defendant were released before trial, there is no condition or combination of conditions that will "reasonably assure…the safety of any other person and the community[.]" 18 U.S.C. §3142(g). Accordingly, he should be detained pending trial.

## I. HISTORY & ARGUMENT

The grand jury indicted defendant for transmitting an interstate threat to injure federal law enforcement personnel, specifically: "Time to bear spray ICE!" and, approximately six months later transmitting another interstate threat to kill federal law enforcement personnel, specifically: "Kill the ice military police!", in violation of 18 U.S.C. §875(c). R. 3, Indictment. Defendant made his initial appearance on September 21, 2026, and the United States moved to

have defendant detained pending trial.

Defendant's §875(c) offenses constitute "crimes of violence," 18 U.S.C. §3142(f)(1)(A), because they have as an element "the…threatened use of physical force against the person of another." 18 U.S.C. §3156(a)(4)(A); *see also*, *United States v. Wagner*, No. 26-1294, __ F.4th __, 2026 WL 2333589, *5 (6th Cir. Aug. 12, 2026) ("[T]his Court has before characterized…transmitting interstate threats [] as categorically 'crimes of violence.'"); *United States v. Cooper*, No. 3:19-MJ-04254-1, 2019 WL 4259454, *3 (M.D. Tenn. Sept. 9, 2019) ("Communicating a threat [to harm individuals in a Planned Parenthood facility] in violation of 875(c) constitutes a 'crime of violence' for purposes of the Bail Reform Act.").

*ICE agents are a sufficiently particularized group*

At his initial appearance on September 21, 2026, defendant argued that the threats he made were not "crimes of violence," and thus not eligible for a detention hearing, because his threats were not made to a particular person. Defendant is wrong. To start, the Sixth Circuit Pattern Jury Instruction on this specific offense includes threats made to "groups." Sixth Circuit JI 18.01. Noting that threats can be directed at individuals and groups, the Sixth Circuit recently observed in *Wagner* that "Wagner's 'threatening statements regarding law enforcement officers' are also strong evidence that he 'would pose a serious danger to the community if released' pending trial." *Wagner*, 2026 WL 2333589, at *11, citing *Stone*, 608 F.3d at 953; *United States v. Davis*, 2024 WL 3372682, at *2 (5th Cir. July 11, 2024) (defendant charged with §875(c) for "threaten[ing] victims online"); *see also United States v. Killingsworth*, 2022 WL 294083, at *1 (6th Cir. Feb. 1, 2022) (affirming §875(c) conviction in which defendant "threatened to kill any law enforcement officer"); *United States v. Khan*, 937 F.3d 1042, 1046 (7th Cir. 2019) (cleaned up) (holding as sufficiently particular threats to kill "college students," "vulnerable individuals,"

and "witnesses that get in the way"); *United States v. Stevens*, 881 F.3d 1249, 1255 (10th Cir. 2018) (defendant "targeted messages of deadly action at [Tulsa Police Department] officers generally"); *United States v. Christy*, No. 3:18-cr-223, 2020 WL 2794617, at *1, 3 n.5 (M.D. Pa. May 29, 2020) (defendant "threatening to use lethal force against any law enforcement officer who sought to apprehend" him qualified as crime of violence under the Bail Reform Act); *United States v. Segari*, 828 F. Supp.3d 1354, 1363-65 (M.D. Fla. 2026) (holding that §875(c) applies to threats against groups).

Keeping in mind that "a detention hearing is not to serve as a mini-trial [] or as a discovery tool for the defendant," *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986), the seminal case in the Sixth Circuit that guides the pretrial detention hearing procedure and analysis is *United States v. Stone*, 608 F.3d 939 (6th Cir. 2010). In light of *Stone*'s analysis of the §3142 factors, the United States anticipates showing at the detention hearing the following:

**A. Prosecution's Burden to Show Probable Cause**

As discussed above, the indictment charges defendant with two felony offenses of making interstate communications that contained threats in which he exhorted others to injure and kill federal ICE agents. A grand jury's indictment "by itself, establishes probable cause to believe that a defendant committed the charge." *Id.* at 945 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

**B. The Prosecution's Burden to Show Dangerousness**

**1. The Nature and Circumstances of the Offenses Charged**

"To establish a defendant's dangerousness, the Government must 'identify an articulable threat posed by the defendant to an individual or the community.'" *Wagner*, 2026 WL 2333589, *4, citing *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). The charges against

defendant are serious crimes of violence. *Wagner*, 2026 WL 2333589, at *5; *United States v. Hagar*, 822 F. App'x 361, 369 (6th Cir. 2020) (deeming similar charges "extremely serious").

As alleged in the indictment, in public posts on Bluesky, defendant exhorted the public to "bear spray ICE!" and to "kill the ice military police!" Using his Bluesky handle "Resistor (with a vulgar hand gesture emoji) @tennessee-me.bsky.social", defendant posted on June 4, 2025:




Bear spray, which is designed to effectively deter an aggressive bear, is made of red pepper oil (oleoresin capsaicin) and can inflame the eyes and upper respiratory system. Additionally, bear spray contents are under pressure and when deployed comes out at more than 70 mph and could cause permanent eye damage. Alaska Department of Fish and Game: www.adfg.alaska.gov/static/species/livingwithwildlife/bears/pdfs/bear_spray_what_you_should_know.pdf (accessed Sept. 22, 2026).

Several months later, on October 7, 2025, defendant posted a response to another Bluesky user's post criticizing ICE enforcement operations in Chicago:




**2. The Weight of the Evidence Against Defendant**

"This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (internal citations omitted). This factor "only goes to the likelihood that the defendant will pose a danger to the community and is not a pretrial determination of guilt." *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *2 (6th Cir. July 20, 2020). This Court "may consider as evidence of dangerousness" a defendant's "statements indicating a violent intent" even though those statements "do[] not relate to the

offenses charged." *Wagner*, 2026 WL 2333589, at *6, citing *Stone*, 608 F.3d at 953. Additionally, the Sixth Circuit emphasized that "courts routinely consider a defendant's threatening statements, among other speech, when determining whether the defendant poses a danger to the community." *Id*. (citing cases).

In addition to the two threat posts above that serve as the basis for both counts in the indictment, defendant stridently and repeatedly issued public calls for open violence against law enforcement, elected officials, and government officials he did not like:









Defendant repeatedly exhorted others to commit violence against law enforcement and other government officials. "A defendant need not have 'engaged in violence' to warrant detention." *Wagner*, 2026 WL 2333589, at *10, citing *Stone*, 608 F.3d at 947 n.6; *see also United States v. Turner*, 720 F.3d 411, 413-14 (2d Cir. 2013) (affirming defendant's conviction for publishing a blog post listing certain Seventh Circuit judges who "deserve[d] to be killed").

During a consensual interview at defendant's home on August 5, 2026, defendant admitted to making the threatening Bluesky posts and said he would refrain from making any more threat posts. However, approximately two weeks later, on August 21, while using Facebook, because Bluesky closed his "Resistor" account, defendant posted:




While defendant previously called for others to "beat the shit out of the gestapo" in an earlier post above, the significance of this post-law enforcement interview Facebook post is not the political insult. It is what the recent post reveals about defendant's reaction to law enforcement intervention after he had threatened to kill federal officers. That reaction matters under §3142(g) because the Court must determine whether conditions of release can reasonably assure the safety of the community. A defendant who threatened to kill federal officers, and who

thereafter responded to law enforcement intervention by publicly portraying those officers as the "Gestapo," presents a materially different detention question from a defendant whose threatening conduct appears isolated and who thereafter disengages from it.

### 3. The Nature and Seriousness of the Danger

The nature and seriousness of the danger to any person or the community that would be posed by [defendant's] release" is significant. 18 U.S.C. §3142(g)(4). In *Wagner*, the Sixth Circuit observed that "internet-based threats like those Wagner is charged with making pose well-documented harms." 2026 WL 2333589, at *7. The Tenth Circuit §875(c) case of *United States v. Wheeler*, in which defendant made two Facebook posts calling on people to kill members of the Tulsa Police Department, captured the unique danger of online threats:

> Several attributes of the Internet substantially amplify the fear an individual can instill via threats or incitement. Such threats have the ability to reach a vast audience—far more than the traditional speaker or author published in a single venue. The threats may often come cloaked in anonymity, allowing authors to make menacing statements they would never consider making to an individual person. And, given the prevalence and diversity of Internet fora and discussion boards, such exhortations may often find a receptive audience of like-minded individuals—perhaps audiences more willing to do the bidding of one urging violent action.

776 F.3d 736, 745 n.4 (10th Cir. 2015).

The same serious dangers apply here. Defendant's "threatening statements regarding law enforcement officers are also strong evidence that he would pose a serious danger to the community if released pending trial." *Wagner*, 2026 WL 2333589, at *7, citing *Stone*, 608 F.3d at 953.

**4. History and Characteristics**

Some of the factors to be examined under this consideration include defendant's "character, physical and mental condition, … employment, …past conduct, … criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). While not all of these factors weigh in favor of detention, some of them do. For example, defendant does not have an honorable military discharge; his service ended with a characterization of Under Other Than Honorable Conditions in 1979. While records are not available, defendant told the Pretrial Services Officer that this discharge was the result of a "scuffle."

Later in 1999, defendant was charged in Atlanta, Georgia with willful obstruction of law enforcement officers by use of threats or violence. That this offense apparently did not result in a recorded conviction is not determinative, because "a prior record of violence" is not "essential" to proving that a defendant is dangerous for detention purposes. *Wagner*, 2026 WL 2333589, at *7, citing *United States v. Rodriguez*, 950 F.2d 85, 89 (2d Cir. 1991). In any event, according to the Pretrial Services Officer, defendant does, in fact, have prior convictions from 2001 for criminal damage to property in the second degree and criminal trespass.

These prior arrests and charges are relevant because they provide historical context for assessing whether the charged conduct is an aberration or part of a recurring pattern of threatening law enforcement personnel:

**1979**: General Discharge, Under Other Than Honorable Conditions
**1999**: Obstructing law enforcement with threats or violence
**2001**: Criminal trespass and property damage
**June 4, 2025**: Threat to bear spray ICE
**October 7, 2025**: Threat to kill ICE agents
**August 21, 2026** (after being confronted by agents): "I've been silenced by the trump Gestapo"

The age of some of the prior incidents (*i.e.*, 1979 other than honorable discharge, 1999 obstructing law enforcement by use of threats or violence, 2001 conviction for criminal trespass and property damage) may diminish their evidentiary weight, but it does not make them irrelevant, particularly where the prior conduct and the present conduct share the same distinctive feature: threats directed at law enforcement.

As for drug use, defendant has a history of smoking marijuana beginning when he was 18— *i.e.*, approximately 50 years—with his last use occurring the day before his federal arrest on September 21, 2026. This is concerning because a recent study by the National Institutes of Health found a statistical link between frequent or persistent marijuana use and an increased risk of violent behavior. Norman S. Miller et al., *A Review of Cases of Marijuana and Violence*, 17 INT'L. J. ENVTL. RES. & PUB. HEALTH 1578 (2020). Defendant's violence and his long-time marijuana use weigh in favor of detention.

Lastly, defendant is 68 years old. That is a consideration under §3142(g)(3), the government does not suggest otherwise. But age is one characteristic among many. It does not create a presumption that a defendant who has twice threatened to maim and kill federal agents is no longer dangerous. Indeed, defendant's preferred medium of expressing those violent threats, a keyboard via social media platforms inside his home, renders his age less relevant to the Court's dangerousness analysis.

**5. No Conditions Will Reasonably Assure the Safety of the Community**

The proposed conditions—which do not include a limitation on defendant's use of the internet—are inadequate. Even internet limits, if included as potential conditions, would be inadequate for the same reasons the Sixth Circuit rejected such easily circumvented limits in *Wagner*: internet crimes are "not readily susceptible to effective monitoring" and defendant

could "'easily evade' the device-monitoring requirement by accessing another device that is not equipped with monitoring software." *Wagner*, 2026 WL 2333589, at *8. Significantly, defendant's decision to use another social media platform to make a contextually veiled threat in a public post about the agents who interviewed him—agents from the same agency that defendant said should be assaulted and killed—demonstrate that minimal, easily circumvented conditions will not reasonably assure the safety of the community.

The problem with such conditions is that they do not address the central risk demonstrated by this defendant's conduct: his willingness to use electronic communications to threaten law enforcement personnel. A condition prohibiting threats simply instructs defendant to do the very thing the grand jury has already accused him of doing. And a no-contact condition—against, for example, the two HSI agents who spoke with defendant last month and who executed his arrest warrant yesterday— does not necessarily prevent generalized threats against federal officers communicated through social media.

## II. CONCLUSION

For all the reasons stated above, and which will be further shown and argued at the detention hearing, the United States asserts that defendant should be detained pending trial because there is no condition or combination of conditions which will "reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(g).

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: *s/ David P. Lewen, Jr.*
David P. Lewen, Jr. (TN BPR# 042915)
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
865.545.4167
david.lewen@usdoj.gov